UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILSON COAKLEY and WARREN COAKLEY,

                 Plaintiffs,

      – against –

AYANNA WEBB, WANDA OCHSHORN, OLA-NREWAJU OTEGBADE individually and as Manager, and CITY OF NEW YORK,

                 Defendants.

**OPINION AND ORDER**

14 Civ. 8438 (ER)

RAMOS, D.J.:

       This Order addresses Plaintiffs' counsel's motion for an award of $54,364.50 in attorneys' fees and costs following Plaintiffs' acceptance of a Rule 68 offer from Defendants. The question before the Court is whether the requested award is excessive. Defendants object that counsel's claimed hourly rate of $625 is unreasonable, and that the total amount of time counsel claims they expended, 108.25 hours, is overstated. For the reasons set forth below, the Court awards Plaintiffs' counsel a reduced total award of $45,548.

## I.   Factual Background[1]

       Plaintiffs Wilson Coakley ("Wilson") and Warren Coakley ("Warren") commenced this suit on October 22, 2014 against Defendants City of New York (the "City"), Ayanna Webb, Wanda Ochshorn and Ola-Nrewaju Otegbade. Compl. ¶ 1, Doc. 1. Plaintiffs alleged that on July 15, 2013, Defendant Webb, a child protective specialist for the Administration of Child Services ("ACS"), removed Warren, then a sixteen-year-old, from his mother's care after learning that Warren's mother was neglectfully caring for him due to a drug problem. *Id.* at ¶¶

---

[1] All facts stated herein are undisputed.

17, 24.  Immediately following Warren's removal, the City initiated proceedings in the Family

Court of the State of New York, which resulted in Warren being remanded to the custody of the

Commissioner of the ACS.  *Id.* at ¶ 25; Answer ¶ 29, Doc. 15.  Warren remained in ACS's

custody from July 15, 2013 until August 1, 2013.  Compl. ¶ 30.

At the time Warren was removed, Plaintiff Wilson, Warren's father, was not notified of

Warren's removal and was not afforded the opportunity to see him until ten days later, July 25,

2013.  *Id.* at ¶ 35.[2]  Consequently, Plaintiffs Warren and Wilson sued Defendants under 42

U.S.C. Section 1983 for deprivation of their First, Fourth, and Fourteenth Amendment rights,

and under New York state law for false arrest and false imprisonment.  *Id.* at ¶ 1.

An Initial Pretrial Conference was held in this Court on March 3, 2015, in which a

discovery deadline was instituted for July 30, 2015.  Civil Case Disc. Plan and Scheduling Order,

Doc. 13.  In the following months, the parties had several settlement conferences with the

Magistrate Judge.  On June 2, 2015, the parties agreed to a new Discovery Plan and Scheduling

Order, which provided that discovery be completed by September 30, 2015.  Civil Case Disc.

Plan and Scheduling Order, Doc. 21.  Over the course of discovery, the parties had several

disagreements regarding the production of Defendant Webb's handwritten field notes from the

day she removed Warren from his mother's care.  These disagreements resulted in the filing of

several letters with this Court and one telephone conference with the Magistrate Judge.  *See*

Defs.' Letter to Mag. J. Freeman, June 12, 2015, Doc. 24; Pls.' Letter to Mag. J. Freeman, July 1,

2015, Doc. 26; Defs.' Letter to Mag. J. Freeman, July 2, 2015, Doc. 27.  Aside from the letters

and telephone conference, however, the Plaintiffs made no other motions, conducted no

depositions, and made no further court appearances.

---

[2] At the time of Warren's removal, Warren was living with his mother on weekdays and with Wilson on weekends.
Compl. ¶ 16.

On July 30, 2015, Defendants offered each Plaintiff a settlement offer pursuant to Rule

68 of the Federal Rules of Civil Procedure.  The offer made to Plaintiff Wilson granted him a

judgment against the City in the amount of $5,000 plus "reasonable costs and attorneys' fees

accrued to July 24, 2015."  Acceptance of Rule 68 Offer, Corrected 1, Doc. 31.  Plaintiff Warren

accepted a similar Rule 68 Offer, which awarded him a judgment of $15,000 plus reasonable

costs and attorneys' fees.  *Id.*  This Court ordered, adjudged and decreed Defendants' Rule 68

Offers on August 3, 2015.  Judgment, Doc. 32.

Plaintiffs were represented in this matter by Carolyn A. Kubitschek and David Lansner of

the law firm Lansner & Kubitschek.  Ms. Kubitschek is a graduate of the University of Chicago

Law School and has practiced law for over forty years, specializing in civil rights law.

Kubitschek Decl. ¶¶ 5, 6.  Throughout her career, Ms. Kubitschek has handled over 200 civil

rights cases, published seventeen scholarly articles, served as a professor at four New York based

law schools, and has received various awards for her work as an advocate.  Kubitschek Decl. Ex.

3.  Mr. Lansner is a graduate of New York University School of Law, and like Ms. Kubitschek,

has handled over 200 civil rights cases in his forty plus years as an attorney.  *Id.*  He has also

authored several publications and provided civil rights legal training for various public interest

groups in the New York City Area.  *Id.*

On August 16, 2015, in accordance with 42 U.S.C. Section 1988, Ms. Kubitschek and

Mr. Lansner ("Counsel") applied for an award of attorneys' fees and costs, totaling $54,364.50.

Notice of Mot., Doc. 33.  In support of their application, Counsel submitted a signed retainer

agreement.  Reply Decl. on Fee Mot. Ex. 1, Doc. 44-1.  Although the retainer is a standard

contingency fee agreement, it provides that Counsel's current hourly rates are $625 (which

Counsel assert is their customary rate for federal casework), as well as an itemized timesheet

documenting the total number of hours worked and the specific tasks performed by Counsel and

their paralegal.  *See*, Reply Decl. on Fee Mot. Ex. 1, Doc. 44-1; Kubitschek Decl. Ex. 5, Doc. 34-

5.  The timesheet credits 80 total hours of work to Counsel and 32.35 hours to a paralegal

(charged at a rate of $125 per hour).  According to the timesheet Counsel's tasks included, but

were not limited to, legal research, preparation for a deposition, and several conferences with the

Magistrate Judge.  *Id.*[3]

Defendants object to Counsel's motion on the grounds that their hourly rates are

"unreasonably high," and that the number of hours billed by the firm is excessive, specifically

citing the vagueness of several timesheet entries.  *See* Defs.' Mem. of Law in Opp'n to Pls.' Mot.

for Attorney's Fees and Costs ("Defs.' Opp'n") 3–11, Doc. 43.

## II.    Legal Standard for an Award of Attorneys' Fees

Pursuant to Section 1988, a court may award "the prevailing party" in a Section 1983

lawsuit reasonable attorneys' fees and costs.  "[T]o qualify as a prevailing party, a civil rights

plaintiff must obtain at least *some relief* on the merits of his claim.  The plaintiff must obtain an

enforceable judgment against the defendant from whom fees are sought, or comparable relief

through a consent decree or settlement." *Barbour v. City of White Plains*, 788 F. Supp. 2d 216,

221 (S.D.N.Y. 2011) (emphasis added) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)

(citations omitted)).  A party that accepts a Rule 68 offer is considered a "prevailing party" under

Section 1988.  *See Barbour,* 788 F. Supp. 2d at 221.[4]  Plaintiffs, having accepted a Rule 68 Offer

---

[3] Aside from 3.1 hours of work performed by attorney Mr. Lansner, the attorney hours are primarily attributable to Plaintiffs' lead counsel, Ms. Kubitschek.  Kubitschek Decl. Ex.5.

[4] Rule 68 of the Federal Rules of Civil Procedure provides in pertinent part that "[a]t least 14 days before the date set for trial a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with costs then accrued."  Fed. R. Civ. P. 68(a).

from Defendants, may therefore be awarded reasonable attorneys' fees and costs as the prevailing party in this action.

As outlined by the Second Circuit, calculating a reasonable fee requires an inquiry into the reasonable hourly rate and multiplying that figure by the reasonable number of hours worked. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166–67 (2d Cir. 2011) (stating that this figure is known as the "lodestar" amount). In determining the reasonable hourly rate, "courts must look to the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Ognibene v. Parkes*, 08 Civ. 1335 (LTS), 2014 WL 3610947, at *2 (S.D.N.Y. July 22, 2014) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)). In determining the reasonable number of hours worked, "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A Court may discount a fee award when, for example, attorneys seek compensation for less-skilled work or furnish time entries that lack "sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed." *Mautner v. Hirsch*, 831 F. Supp. 1058, 1077–78 (S.D.N.Y. 1993), *aff'd* in relevant part, 32 F.3d 37 (2d Cir. 1994).

Ultimately, a district court has broad discretion in setting fee awards. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987). "In reviewing the submitted timesheets for reasonableness, the Court relies on its own familiarity with the case, as well as on its experience with the parties' evidentiary submissions and arguments." *Ruiz v. Maidenbaum & Assocs. P.L.L.C.*, 12 Civ. 5044 (RJS), 2013 WL 3957742, at *4 (S.D.N.Y. Aug. 1, 2013) (citation omitted).

### III.    Discussion

### A.    Counsel's Hourly Rate

Defendants argue that Counsel's stated hourly rate of $625 is unreasonably high.  Defs.'

Opp'n 3–9.  A "reasonable fee" is based on a "reasonable hourly rate," defined as "the rate a

paying client would be willing to pay."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v.*

*Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007); *see also Perdue v. Kenny A. ex rel. Winn*, 559

U.S. 542, 552  (2010) (finding that "a 'reasonable' fee is a fee that is sufficient to induce a

capable attorney to undertake the representation of meritorious civil rights cases.").  A district

court must "bear in mind that a reasonable, paying client wishes to spend the minimum necessary

to litigate the case effectively."  *Arbor Hill*, 522 F.3d at 190.  Additionally, the Second Circuit

has advised that courts consider the following factors when determining the reasonableness of a

fee:

> the complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required to
> prosecute the case effectively (taking account of the resources being
> marshaled on the other side but not endorsing scorched earth tactics), the
> timing demands of the case, whether an attorney might have interest
> (independent of that of his client) in achieving the ends of the litigation or
> might initiate the representation himself, whether an attorney might have
> initially acted *pro bono* (such that a client might be aware that the
> attorney expected low or non-existent remuneration), and other returns
> (such as reputation, etc.) that an attorney might expect from the
> representation.

*Id.* at 184.

Counsel request $53,931.25 in attorneys' fees based on a $625 hourly rate.  *See* Notice of

Mot., Doc. 33.  Precedent in the Southern District of New York demonstrates that a reasonable

hourly rate for a civil rights attorney can range from $250 to $650.  *Abdell v. City of New York*,

2015 WL 898974 (S.D.N.Y. Mar. 2, 2015) (listing cases).  The Court finds that although

Counsel's qualifications and experience support an hourly rate near the top of the range, the lack of complexity and relatively brief duration of this case indicate that a $625 hourly rate is unreasonable.

In support of the reasonableness of their claimed $625 hourly rate, Counsel primarily rely on *Abdell v. City of New York* and *Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011).  In *Abdell*, the Court found that $650 was a reasonable hourly rate for a highly experienced civil rights attorney.  2015 WL 898974, at *3.  The four plaintiffs in *Abdell* brought Section 1983 claims stemming from the mass arrests at demonstrations surrounding the 2004 Republican National Convention.  2015 WL 898974, at *1.  After ten years of litigation, which included the dismissal of several claims and the reduction of a large number of plaintiffs, a jury trial was held and the four remaining plaintiffs were awarded $40,000 in compensatory damages and $25,000 in punitive damages.  *Id.*

Plaintiffs' counsel subsequently filed a motion for attorneys' fees.  *Id.*  Plaintiffs' lead counsel was found to customarily bill at a rate of $650 per hour.  *Id.* at *3.  He had nearly thirty years of experience and had handled over 150 civil rights actions.  05-Civ-8453, Spiegel Decl. ¶¶ 4, 7, Doc. 418.  The *Abdell* attorney also lectured at many Continuing Legal Education programs concerning Section 1983 claims, served as a faculty member at Cardozo Law School, and was a member of several New York based Civil Rights advocacy groups.  *Id.* at ¶¶ 11, 13.

Although the *Abdell* Court noted that, at the time, $600 per hour was at the top of the range of rates awarded in Section 1983 cases in the Southern District of New York, it found that an hourly rate of $650 was reasonable for a number of reasons.  In particular, the court noted the lead attorney's experience, the duration and complexity of the case, the fact that awards increase

over time, and that the attorney's customary rate was $650 per hour.  *Abdell*, 2015 WL 898974, at * 3.

In *Barbour v. City of White Plains*, an earlier case involving the same attorney as in *Abdell*, the Southern District approved an hourly rate of $625.  788 F. Supp. 2d at 216.  Plaintiffs brought a Section 1983 suit alleging false arrest, use of excessive force, malicious prosecution, and failure to intervene.  *Id.* at 219.  Nearly four years later Plaintiffs accepted Rule 68 offers from Defendants.  *Id.*

The Court finds that compared to the lead attorney in *Abdell* and *Barbour*, Ms. Kubitschek and Mr. Lansner have comparable experience and qualifications.  In fact, both Ms. Kubitschek and Mr. Lansner  have ten more years of experience and have each handled approximately 50 more civil rights cases than the attorney in *Abdell* and *Barbour* had. Therefore, Counsel's experience indicates that they are as highly qualified as those attorneys who have been awarded an hourly rate at the very top of the range.

Defendants suggest that Counsel's experience does not in fact warrant such a high hourly rate, however.  Defs.' Opp'n 5.  Defendants cite *Torres v. Gristede's Operating Corp*, in which an attorney with twenty-two years of experience requested an hourly rate of $650, but was only awarded an hourly rate of $550.  2012 WL 3878144, at *2–3 (S.D.N.Y. Aug. 6, 2012) (reducing the hourly rate because of the attorney's lack of experience and because the requested rate was outside the bounds of rates awarded within the Southern District of New York).  Yet, Counsel in this case have nearly twice as many years of experience as the attorney in *Torres* did.

Defendants further cite *M.C. ex rel. E.C. v. Dep't of Educ. of City of New York*, in which an attorney employed by a non-profit organization was awarded an hourly rate of $375.  2013 WL 2403485, at *7 (S.D.N.Y. June 4, 2013) (awarding a $375 hourly rate because the court

found that the requested hourly rate of $400 was not the prevailing market rate for an attorney

with that level of experience).  Yet despite having nearly twenty-five years of experience, the

attorney had only specialized in special education law for seven years.  Here, Counsel have

practiced civil rights law for nearly their entire 40-year careers.  *Id.* at *2.[5]

 Defendants additionally argue that this District "will generally only award very high rates

to partners at large, nationally recognized law firms with a significant national and international

presence[]" and thus Counsel's hourly rate should be reduced for that reason.  Defs.' Opp'n 4.

While the Court is aware that smaller law firms typically charge lower hourly rates than large,

corporate firms, precedent in this District clearly demonstrates that experienced solo civil rights

practitioners and civil rights attorneys from small law firms have been awarded hourly rates as

high as $550 to $650.[6]

 The Court does concur with Defendants, however, that in spite of Counsel's extensive

experience, the duration and simplicity of this case warrant a reduction of Counsel's claimed

hourly rate.  The *Abdell* case spanned for nearly a decade, involved the filing of numerous

---

[5] Defendants' remaining cases similarly involve attorneys with much less experience than Counsel in this case.  In *Brown v. Green 317 Madison, LLC*, an attorney with "only 11 years['] experience" requested an hourly rate of $450, which was eventually reduced by the court.  2014 WL 1237448, at *9 (S.D.N.Y. Feb. 4, 2014).  The reduction was premised on the attorney's lack of experience, his performance of de minimus work on the case, and his uncertainty of how many ADA cases he had handled in his career.  *Id.*  In *Spencer v. City of New York*, the attorney had approximately twenty years of experience, which is half the experience of Ms. Kubitschek, and had over 100 cases reported in official reports, which is approximately one half of the cases handled by Ms. Kubitschek.  2013 WL 6008240, at *4 (S.D.N.Y Nov. 13, 2013) (reducing the attorney's hourly rate so that the rate was in accordance with the prevailing market rate, despite finding that the attorney's level experience weighed in favor of finding the requested rate to be reasonable).

[6] *See Abdell*, 2015 WL 898974 (awarding a solo practitioner in a civil rights lawsuit an hourly rate of $650); *Long v. City of New York*, 09-CV-6099, Doc. 39 (S.D.N.Y. 2010) (finding $650 to be a reasonable hourly rate for an experienced civil rights attorney from a small law firm litigating a Section 1983 lawsuit); *Adorno v. Port Auth. of New York & New Jersey*, 685 F. Supp. 2d 507 (S.D.N.Y. 2010) (concluding that a $550 was a reasonable hourly rate for the lead attorney from a four person law firm in a civil rights lawsuit); *Rozell v. Ross-Holst*, 576 F Supp. 2d 527 (S.D.N.Y. 2008) (awarding an attorney from a small law firm an hourly rate of $600 in a civil rights case).  Although Defendants cite *Saunders v. Salvation Army*, 2007 WL 927529 (S.D.N.Y. 2007) and *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362 (S.D.N.Y. 2005) as evidence that reasonable hourly rates for solo practitioners and attorneys from small law firms range from $250-$300, both cases were decided nearly ten years ago, and as the Second Circuit reasonably observed in *Abdell*, fee awards increase over time.

motions, the removal of many plaintiffs, and the preparation for and participation in a six day

jury trial.  The *Barbour* case, in which the court awarded an hourly rate of $625, involved four

years of litigation.  The current matter, in contrast, was a fairly standard child-removal case in

which a parent lost brief custody of their child and the two were reunited within days following

Counsel's request that ACS release the child.  Compl. ¶¶ 34–36.  The case lasted less than a year,

required no depositions, and involved no substantial motions or briefing.  Defs.' Opp'n at 6.

Similarly, other than appearing once before this Court and conducting five telephone conferences

with the Magistrate Judge, Counsel had no other discussions with or appearances before this

Court or the Magistrate Judge.

Similarly, the Court agrees with Defendants that the signed retainer agreement is not

indicative of the reasonableness of Counsel's $625 hourly rate.  Counsel's retainer is a

contingency fee agreement, [7] which provides that Counsel's current hourly rate is $625.  Reply

Mem. Supp. Mot. for Attorneys' Fees, Doc 44–1.  However, the retainer specifically states that

Plaintiffs do not possess the financial means to pay the agreed upon hourly rate of $625.[8]  Thus,

the retainer agreement is not actually indicative of Plaintiffs' willingness to pay Counsel an

hourly rate of $625.

The unreasonableness of Counsel's requested $625 hourly rate is further supported by the

absence of any additional evidence, such as affidavits from peer attorneys, statistical evidence, or

past retainer agreements, indicating that an hourly rate of $625 is in fact reasonable in this case.

*See Abdell*, 2015 WL 898974, at *3 (using affidavits from other lawyers that are familiar with

the work of the attorney, to attest to the attorney's skill and the reasonableness of the hourly

---

[7] The Court does note that Counsel have provided a copy of the present retainer agreement.

[8] The agreement specifically states that the Plaintiffs "lack[ed] the financial means" to pay Counsel $625 per hour for litigation expenses as they were incurred.  Reply Mem. Supp. Mot. for Attorneys' Fees 3, Doc 44–1.

rate); *Barbour*, 788 F. Supp. 2d at 225 (providing affidavits from attorneys and statistical reports

in support of the reasonableness of a $625 hourly rate); *Adorno v. Port Auth. of New York & New*

*Jersey*, 685 F. Supp. 2d 507 (S.D.N.Y. 2010) (providing six declarations from peer attorneys in

support of the reasonableness of a $550 hourly rate for an experienced civil rights practitioner).

Thus, despite Counsel's extensive experience, the Court finds that the lack of evidence

attesting to the reasonableness of Counsel's claimed $625 rate, in conjunction with the short and

relatively straightforward nature of this case, indicates that Counsel's claimed hourly rate should

be reduced.

In assessing the appropriate reduction, the Court looks to *Orlander v. McKnight*, 2013

WL 4400537 (S.D.N.Y. Aug. 15, 2013), in which the same Counsel present here sought

attorneys' fees in another child removal case.  In that case, decided just two and one half ago, the

court approved an hourly rate of $500 with a 30% contingency fee.  Were the Court to apply that

same fee structure here, it would come out to the equivalent of a $575 hourly rate.[9]  The Court

finds that a $575 hourly rate credits the extensive experience and qualifications of Ms.

Kubitschek and Mr. Lansner, while properly accounting for the duration and nature of this case.

Consequently, the Court orders a reduction of Counsel's hourly rate by $50.

## B.    The Number of Hours Expended

The fee applicant bears the burden of demonstrating the number of hours expended and

the type of work performed through contemporaneous time records that "specify, for each

attorney, the date, the hours expended, and the nature of the work done."  *New York State Ass'n*

*for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  The records,

---

[9] Counsel billed 80 hours of work and obtained a total settlement of $20,000 in this case.  Applying the fee structure from *Orlander* would therefore result in a contingency fee of $6,000 (30% of $20,000) plus $40,000 for work billed by Counsel (80 hours of work charged at $500 per hour), for a total award of $46,000.  Dividing this total award by 80 hours provides for an hourly rate of $575.

—

however, need not specify "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 477 (S.D.N.Y. 1989) (citations omitted).

The court has an obligation to exclude requested hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. "In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Harrell v. Van der Plas*, 2009 WL 3756327, at *6 (S.D.N.Y. Nov. 9, 2009) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)); *see also Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (finding that "Counsel for the prevailing party must exercise 'billing judgment;' that is, he must act as he would under the ethical and market restraints that constrain a private sector attorney's behavior in billing his own clients) (citation omitted).

According to their timesheets, Counsel's firm provided 112.25 total hours of billable work. *See* Kubitschek Decl. Ex. 5.[10] Although Counsel's legal research entries were sufficiently specific, the Court finds that Counsel spent an excessive amount of time conducting the legal research. Thus, the Court will reduce the number of hours Counsel otherwise billed by 10%. Similarly, due to the paralegal's overly vague timesheet entries, the Court will reduce the paralegal's total number of billable hours by 10%.

1.         **Legal Research Entries**

Defendants argue that Counsel's billable hours should be reduced because Counsel's timesheets contain a multitude of "vague" legal research entries, such as "due process," and

---

[10] Counsel's calculation excludes 7.05 hours from their original total, which they voluntarily struck upon review of their timesheet.

"immunity." Defs.' Opp'n 9–11. The Court finds that Counsel's research entries are not overly vague because they are specific enough to allow this Court to determine the reasonableness of the entries.

In *M.L. v Bd. of Educ. of the City of New York*, 2003 WL 1057476, (S.D.N.Y. Mar. 10, 2003), the court determined that entries simply entitled "Legal Research" were overly vague because the court was "unable to determine whether the time expended [was] reasonable." *Id.* at 4; *see also Vishipco Line v. Charles Schwab & Co.*, 2003 WL 1936142, at *2 (S.D.N.Y. Apr. 23, 2003) (same). Unlike the timesheet in *M.L.*, Counsel's entries consistently reference the subject of the legal research conducted. For example, the entries include "Research on removal of children" and "Research on wrongful seizures." Thus, in specifying the topic of their legal research, the Court can discern that Counsel's legal research was relevant to the present matter, and therefore the entries are not sufficiently vague.

Although the descriptions of the legal research were sufficiently specific, Defendants correctly point out that it was excessive for a civil rights attorney of forty years experience to spend eleven hours researching such basic topics as, for example, "due process," "municipal liability" and, "retaliation." Defs.' Opp'n 10. In her forty years of experience, Ms. Kubitschek has tried over 200 civil rights cases and, as discussed above, has a sufficient understanding of civil rights case law to be able to command an hourly rate at or near the top of the range charged by civil rights attorneys in the Southern District of New York. Thus, because Ms. Kubitschek spent an excessive number of hours researching basic legal doctrine, the Court will reduce Ms. Kubitschek's total number of billable hours by 10%.

2.          **Paralegal Work**

Defendants lastly object to the number of hours billed by Counsel's paralegal and request

a reduction of at least 4.25 hours.  Defs.' Opp'n 11.  After reviewing the paralegal's timesheet,

the Court finds the following entries to be overly vague: "Meeting with Client" (.5 horus);

"Preparation of Notes and Call Log Printout" (.9 hours); and "Telephone call to opposing

counsel" (.2 hours).  Kubitschek Decl. Ex. 5.

These paralegal entries do not reference the subject matter of the work performed and are

therefore sufficiently vague.  *See Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, (2d Cir. 1998) (finding

entries such as "staff conference" and "letter to court" to be overly vague); *Meriwether v.

Coughlin*, 727 F. Supp. 823 (S.D.N.Y. 1989) (excluding an entry entitled "reviewing new client

material" because it lacked sufficient specificity).  Thus, the paralegal's total number of billable

hours will be reduced by 10%.[11]

3.          **Excessive Discovery Disputes**

Defendants further argue for the reduction of billable hours because Counsel engaged in

"excessive discovery disputes."  Defs.' Opp'n 10.  Specifically, Defendants cite three letters

from Plaintiffs' Counsel concerning Defendants' compliance with discovery requests.  *See* Pls.'

Letter Addressed to J. Ramos, May 28, 2015, Doc. 16; Pls.' Letter Addressed to Mag. J.

Freeman, June 9, 2015, Doc. 22; Pls.' Letter Addressed to Mag. J. Freeman, July 1, 2015, Doc.

26.

---

[11] Defendants specifically claim the paralegal's preparation of Medicaid liens should be excluded because such liens were never at issue. Defs.' Opp'n 11. However, this argument is unpersuasive. Plaintiffs could have been subjected to a Medicaid lien and the lien would have been deducted from Plaintiff's award. *See* N.Y. Soc. Serv. L. §104-b. Thus, it was reasonable for Counsel to investigate whether a lien could be asserted and for what amount. Additionally, for the same reasons discussed at *supra* Part.III.B.3, the Court rejects Defendants' objection to the hours a paralegal spent preparing for a deposition.

None of these letters, however, can be considered excessive.  On May 28, 2015, Counsel abided by Local Rule 37.2 and sent a letter requesting a pre-motion discovery conference with this Court.  Before contacting the Court, Counsel attempted to resolve this dispute with Defendants, as indicated by discussions between the two sides on May 5, May 20, and May 22, 2015.  *See* Pls.' Letter Addressed to J. Ramos 2.  Furthermore, the Court ultimately found Plaintiffs' discovery dispute significant enough to refer it to a Magistrate Judge.  *See* Order of Reference to a Mag. J., May 29, 2015, Doc. 17.

Nor is a June 9, 2015 letter Counsel sent to Magistrate Judge Freeman excessive. Plaintiffs were specifically instructed by the Magistrate Judge to propose a scheduling order for the production of documents in discovery.  Pls.' Letter to Mag. J. Freeman, June 9, 2015. Adhering to that request cannot be considered excessive.

Finally, a July 1, 2015 letter to Magistrate Judge Freeman seeking court intervention with regard to a discovery dispute was not excessive.  Given that the dispute between the two parties had lasted approximately two months, it was not unreasonable for Plaintiffs to seek Court intervention.

The Court therefore finds that the time spent addressing this discovery dispute was not excessive, and will not be deducted from Counsel's claimed hours.

### 4.        Deposition Prep

Defendants next assert that Counsel's deposition preparation should be subtracted from the total number of billed hours.  Defs.' Opp'n 10.  Defendants' argument hinges on the fact that the deposition prepared for never materialized.  However, the Magistrate Judge's discovery schedule specified that all "non-expert depositions shall be completed by September 15, 2015." Disc Order ¶5, Doc. 22-1.  Counsel scheduled the deposition prior to the September 15 deadline,

and but for Defendants' unexpected Rule 68 Offer on July 24, 2015, the deposition would have presumably taken place in accordance with the schedule.  The Court will not exclude preparation for a deposition that Counsel had every reason to prepare for in order to abide by the Magistrate Judge's discovery timeline.

## C.   Costs

In addition to the requested attorneys' fees, Counsel seek $433.25 in costs.  Mot. For Attorneys' Fees and Costs, Doc. 33.  Costs should "include those reasonable out of pocket expenses incurred by attorneys and ordinarily charged to their clients."  *U.S. Football League*, 887 F.2d at 416.

Plaintiffs' costs consist of the Court's $400 filing fee, in addition to $33.25 in expenses from photocopies, faxes and postage.  Kubitschek Decl. Ex. 5.  Defendants do not object to these costs, and the Court finds that they were indeed "incidental and necessary to the representation" of Plaintiffs.  *U.S. Football League*, 887 F.2d at 416.  $433.25 in costs shall therefore be included in Counsel's total award.  *Id.*

## IV.   Conclusion

For these reasons, it is hereby ordered that Defendants pay Counsel $45,114.75 in attorneys' fees[12] and $433.25 in costs, for a total award of $45,548. The Clerk of Court is

---

[12]

| Attorney | Hourly Rate | Hours Expended | Total Fee |
|---|---|---|---|
| Ms. Kubitschek | $575 | 69.03 | $39,692.25 |
| Mr. Lansner | $575 | 3.1 | $1,782.50 |
| Paralegal | $125 | 29.12 | $3,640 |
| TOTAL | | | **$45,114.75** |

respectfully directed to enter judgment accordingly, terminate the motion, Doc. 33, and to close

this case.

It is SO ORDERED.

Dated:     March 9, 2016
           New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.